2023 IL App (2d) 220291
No. 2-22-0291
Opinion filed May 16, 2023

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| WESTERN & LAKE CHECK CASHERS, LLC, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-SC-5356 |
| PROPANE PETE, LLC, d/b/a Kangaroo Propane, | ) ) ) | Honorable Patricia L. Cornell, |
| Defendant-Appellant. | ) ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Propane Pete, LLC, doing business as Kangaroo Propane, issued a paper check to Christopher Jones for work he did for them. Jones electronically deposited the check into his bank account. The check remained in Jones's possession. Thereafter, Jones went to plaintiff, Western & Lake Check Cashers, LLC, and cashed the check. Plaintiff's bank sought payment from defendant's bank for the check. Defendant's bank returned the check without paying plaintiff's bank, as defendant's bank had already paid the check to Jones's bank when the check was electronically deposited. Plaintiff then demanded payment from defendant, defendant refused to pay, and plaintiff sued defendant. Defendant moved to dismiss, arguing, among other things, that

(1) plaintiff was not a holder in due course and (2) irrespective of plaintiff's status as a holder in due course, defendant was discharged from any liability when its bank paid Jones's bank after Jones electronically deposited the check. The Lake County circuit court denied the motion to dismiss. Following a bench trial, the court found in favor of plaintiff and awarded it $1534.25, which constituted the amount of the check plus various fees and costs. Defendant moved to reconsider, and that motion was denied. This timely appeal followed. The dispositive issues raised are (1) whether plaintiff was a holder in due course of the check; (2) if plaintiff was a holder in due course, whether defendant's obligation to pay the check was discharged under the Uniform Commercial Code—Negotiable Instruments (Code) (810 ILCS 5/3-101 *et seq.* (West 2020)) because of prior payment; and (3) if plaintiff was a holder in due course not subject to any discharge, whether the court should have ordered defendant to pay fees and costs under section 3-416(b) of the Code (*id.* § 3-416(b)). We conclude that (1) plaintiff was a holder in due course, (2) plaintiff was not subject to any discharge, but (3) plaintiff was not entitled to recover fees and costs from defendant under section 3-416(b). Accordingly, we affirm in part and vacate in part.

¶ 2                                   I. BACKGROUND

¶ 3       Jones worked as an independent contractor for defendant, providing defendant with driving services. On November 2, 2020, Kevin Brennan, defendant's operations general manager, wrote a paper check, number 4024, to Jones for "fees" totaling $990 (check 4024). After defendant tendered check 4024 to Jones, he electronically deposited it into his Navy Federal Credit Union (NFCU) account. When Jones electronically deposited check 4024, he indorsed the back of the check but did not mark the box on the back stating, "Check Here After Mobile Or Remote Deposit." Written below Jones's indorsement and the unchecked box was "for E-Deposit only at

NFCU." NFCU accepted the check on November 5, 2020, at 3:10 p.m. Check 4024 remained in Jones's possession.

¶ 4    Approximately four hours after NFCU accepted the electronic deposit of check 4024, Jones went to plaintiff, who provides the public with check-cashing services. Jones sought to cash check 4024. Before accepting and cashing the check, plaintiff registered Jones, a new customer. Registration entailed Jones giving plaintiff his Social Security number, date of birth, address, cell phone number, and employer's name. Jones also tendered to plaintiff his driver's license, and plaintiff took a photograph of Jones. Jones's "Customer Profile," which displayed his driver's license and customer photograph, is in the record on appeal. Jones indorsed the back of check 4024 and presented it to plaintiff, and plaintiff cashed the check. Plaintiff then presented the check to its bank, Fifth Third Bank (Fifth Third). Fifth Third, in turn, presented the check to defendant's bank, JP Morgan Chase Bank (Chase).

¶ 5    Chase withdrew funds from defendant's Chase account and paid NFCU on November 6, 2020. On November 10, 2020, Chase returned check 4024 to plaintiff without paying it. The reason Chase gave for nonpayment was "Duplicate Presentment."

¶ 6    On November 17, 2020, plaintiff sent a certified letter to defendant demanding payment on check 4024 plus a $25 " 'return[ ] check fee.' " Defendant refused to pay.

¶ 7    Thereafter, plaintiff sued defendant. Plaintiff alleged in its verified complaint that it was a holder in due course and, as such, was entitled to enforce the check against defendant.

¶ 8    Defendant moved to dismiss. Citing section 3-414(c) of the Code (*id.* § 3-414(c)), defendant observed that, "[i]f a draft is accepted by a bank, the drawer is discharged, regardless of when or by whom acceptance was obtained." Relying on this section of the Code and *Triffin v. SHS Group, LLC*, 247 A.3d 7 (N.J. Super. Ct. App. Div. 2021), defendant contended that, because

Chase paid check 4024 when it was electronically deposited (and before plaintiff presented the check to Chase for payment), defendant was discharged from any liability to plaintiff. Similarly, defendant contended that plaintiff was not a holder in due course because check 4024 became a nullity once the check was electronically deposited.

¶ 9    In its response, plaintiff reasserted that it was a holder in due course. Thus, defendant's obligation to pay plaintiff was not discharged under the Code by prior payment. Plaintiff explained that under the Check Clearing for the 21st Century Act (Check 21 Act) (12 U.S.C. § 5001 *et seq.* (2018)), electronically depositing check 4024 created a substitute check. When Chase paid this substitute check, defendant's obligation on only the substitute check was discharged. Thus, plaintiff alleged that this discharge was irrelevant because it did not seek to enforce the substitute check. Rather, plaintiff sought to enforce the written paper check, which was not presented to and accepted by any bank before it was presented to plaintiff. Because no bank, including Chase, ever accepted the paper check, plaintiff alleged that defendant's obligation to pay the paper check was not discharged. Citing *Speedy Check Cashers, Inc. v. United States Postal Service*, 286 F. Supp. 3d 934 (N.D. Ill. 2017), plaintiff contended that the recourses under the Check 21 Act do not affect the rights of a holder in due course of the original paper check.

¶ 10    Defendant replied, arguing that there must be a liable party before considering whether plaintiff was a holder in due course. Because defendant was discharged under section 3-414(c) of the Code, it was not a liable party owing any obligation to plaintiff. Defendant also claimed that the Check 21 Act did not apply, as a substitute check created when a check is electronically deposited is the legal equivalent of the original paper check. Because the substitute check and the original paper check were considered equivalent, defendant contended that it was discharged under section 3-414(c) of the Code when Chase paid the substitute check. Further, defendant argued that

*Speedy Check Cashers, Inc.*, was inapplicable, as the court there held the drawer of the original check was protected under the Check 21 Act's substitute check warranties but that the check cashing service, as the transferee of a nonsubstitute (*i.e.*, paper) check, was not, so that the Check 21 Act did not supplant the relief the check cashing service sought under state law. See *id.*

¶ 11 The trial court denied defendant's motion to dismiss, and the case proceeded with a bench trial.

¶ 12 Evidence presented at trial consisted of testimony from Brennan and Eric Page, the director of operations for plaintiff. Their testimony was consistent with the pleadings. Also admitted at trial were (1) a copy of check 4024 as it was electronically deposited into Jones's NFCU account; (2) defendant's bank statement, which showed that check 4024 was paid on November 6, 2020, and that defendant had sufficient funds in its bank account to pay the check; (3) a copy of check 4024, which Jones presented to and indorsed in front of plaintiff, plaintiff presented to Fifth Third, and Fifth Third presented to Chase, which Chase then refused to pay because of "Duplicate Presentment"; (4) the demand letter plaintiff sent to defendant via certified mail; and (5) a copy of the registration form and materials plaintiff created when Jones presented it with check 4024.

¶ 13 The court, which found both Brennan and Page credible, found in favor of plaintiff and awarded it the amount of the check ($990), the $25 return check fee, $350 in attorney fees, and $169.25 in court costs, all of which totaled $1534.25. In ruling for plaintiff, the court determined that plaintiff was a holder in due course and, thus, the prior payment of the check did not discharge defendant's obligation to plaintiff.

¶ 14 Defendant moved the court to reconsider its judgment, arguing that plaintiff was not a holder in due course and, thus, was subject to the defense of prior payment under section 3-414(c) of the Code. The trial court denied the motion.

¶ 15    Defendant timely appealed.

¶ 16                                    II. ANALYSIS

¶ 17    Three issues are raised in this appeal: (1) whether plaintiff was a holder in due course, (2) if plaintiff was a holder in due course, whether defendant's obligation to pay the check was discharged under the Code, and (3) if plaintiff was a holder in due course not subject to any discharge, whether the court should have ordered defendant to pay plaintiff fees and costs. We consider each issue in turn.

¶ 18    Before considering the issues raised, we make two observations. First, our analysis uses certain terms interchangeably. For example, we have used "drawer" to refer to "maker." For purposes of this appeal, those terms are synonymous. See 810 ILCS 5/3-103(a)(3) (West 2020) (" 'Drawer' means a person who signs or is identified in a draft as a person ordering payment."); *id.* § 3-103(a)(5) (" 'Maker' means a person who signs or is identified in a note as a person undertaking to pay."). Similarly, we have used the term "check" interchangeably with the term "instrument" or "negotiable instrument." See *id.* § 3-104(b) (" 'Instrument' means a negotiable instrument."); *id.* § 3-104(f) (" 'Check' means (i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check. An instrument may be a check even though it is described on its face by another term, such as 'money order.' "). These terms, too, are synonymous for purposes of this appeal.

¶ 19    Second, our analysis relies partly on authority from other jurisdictions. Because the Code is based on the model Uniform Commercial Code and, thus, is essentially uniform throughout most jurisdictions that have adopted the law, we find our reliance on foreign authority proper. See *Patrick v. Wix Auto Co.*, 288 Ill. App. 3d 846, 849 (1997) ("When there is a lack of Illinois cases interpreting the Illinois Uniform Commercial Code, [the appellate] court has looked to Uniform

Commercial Code decisions in other jurisdictions."); *Rebaque v. Forsythe Racing, Inc.*, 134 Ill. App. 3d 778, 781 (1985) (considering foreign authority after observing that, "[a]lthough the parties have not cited to us any Illinois cases, and we have not found any in our own research, in which an Illinois reviewing court has considered the problem before us, the courts of other jurisdictions which have adopted the Uniform Commercial Code, have decided the question").

¶ 20    Turning to the issues raised, we first address whether plaintiff was a holder in due course. The trial court found that plaintiff was. We review the trial court's judgment and its findings of fact under the manifest-weight-of-the-evidence standard. *LifeEnergy, LLC v. Illinois Commerce Comm'n*, 2021 IL App (2d) 200411, ¶ 121; *Village of Lisle v. Spelson*, 2019 IL App (2d) 180673, ¶ 11. " 'Findings of fact are deemed contrary to the manifest weight of the evidence only when an opposite conclusion is clearly evident from the record.' " *LifeEnergy, LLC*, 2021 IL App (2d) 200411, ¶ 121 (quoting *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL App (1st) 150425, ¶ 17).

¶ 21    Section 3-302(a) of the Code (810 ILCS 5/3-302(a) (West 2020)) defines a holder in due course, providing:

> "(a) Subject to [defenses not applicable here], 'holder in due course' means the holder of an instrument if:
>
> > (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity, and
>
> > (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as

part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306 [810 ILCS 5/3-306 (West 2020)], and (vi) without notice that any party has a defense or claim in recoupment stated in Section 3-305(a) [*id.* § 3-305(a)]."[1]

Put more simply, courts have defined a holder in due course as "someone who takes an instrument that appears to be facially valid, for value, in good faith, without notice that it is overdue, dishonored, or subject to an uncured default with respect to payment, contains no unauthorized signature, has not been altered, and is not subject to certain other defenses." *Coleman v. Heidke*, 291 Ill. App. 3d 670, 674 (1997). Defendant submits that plaintiff was not a holder in due course, because there is no evidence of "value" and "good faith." 810 ILCS 5/3-302(a)(2)(i), (ii) (West 2020). Defendant contends that Page's testimony that Jones was "paid for the check" is insufficient to establish both of these elements. Regarding "value," defendant argues that no evidence was presented concerning "what the [p]laintiff paid [Jones] for the check, the actual payment amount, payment form, type of payment[,] or the specific form of consideration given to [Jones]." Concerning "good faith," defendant claims that "[t]he purchase for an amount less than its face value is not of itself sufficient to charge [plaintiff] with notice of existing equities, but it is a factor to be considered along with other factors as evidence of bad faith."

---

[1]Section 3-305(a)(1) of the Code (810 ILCS 5/3-305(a)(1) (West 2020)) provides that the only viable defenses against a holder in due course are (1) infancy of the obligor; (2) duress, lack of legal capacity, and illegality, which nullify the obligor's obligation; (3) fraud in the inducement of the obligor; and (4) discharge of the obligor in insolvency proceedings.

¶ 22    Resolving defendant's arguments necessarily begins with examining the burden of proof in cases involving a holder-in-due-course claim. The Code "provides that when the signatures on a [check] are admitted or established, production of the [check] entitles a holder to recover unless the defendant establishes a defense." *Tuttle v. Rose*, 102 Ill. App. 3d 865, 866-67 (1981); see 810 ILCS 5/3-308 (West 2020). "This means that once the holder produces the [check], he is entitled to recover in the absence of any further evidence." *Tuttle*, 102 Ill. App. 3d at 867. The Code "incorporates a burden-shifting principle which makes a 'holder' the functional equivalent of a 'holder in due course' *until a defense has been shown to exist*." (Emphasis in original.) *Bank of North Carolina, N.A. v. Rock Island Bank*, 630 F.2d 1243, 1247 (7th Cir. 1980); see 810 ILCS 5/3-308 (West 2020).

¶ 23    Here, at trial, plaintiff introduced check 4024, which Jones presented to plaintiff for payment and Chase returned unpaid. Because plaintiff possessed check 4024, it was deemed a holder in due course until defendant established a defense that nullified plaintiff's status. 810 ILCS Ann. 5/3-308, Uniform Commercial Code Comment 2, at 191 (Smith-Hurd 2014) (physical possession of a check creates a *prima facie* case that the possessor of the check is a holder in due course); *Tuttle*, 102 Ill. App. 3d at 867 (once the holder produces the check, "[t]he defendant has the burden of establishing any defense"); 4 William D. Hawkland *et al.*, Uniform Commercial Code Series § 3-417:13 (1999) ("A holder in due course does not intend to purchase a lawsuit and should not be forced to prove his status as a holder in due course to recover on the instrument.").

¶ 24    Instructive on this point is *Belmont-Central Exchange, Inc. v. Jacobs*, 322 Ill. App. 523 (1944). There, both parties owned currency exchange businesses in Chicago. *Id.* at 524. The defendant issued a check for its customer payable to a soldier stationed in Georgia. *Id.* at 524, 526. The check was intercepted in the mail between Chicago and Georgia. *Id.* at 526. Thereafter, the

check was presented to the plaintiff by a third person, Jack Thompson. *Id.* at 525. When Thompson presented the check to the plaintiff, the back of the check was indorsed by the soldier *and* Thompson. *Id.* at 524-25. The plaintiff paid Thompson the check amount minus a small service fee. *Id.* at 525. The amount of the service fee was not disclosed. See *id.* Before the check was presented to the defendant's bank, the defendant told its bank not to pay it. *Id.* The defendant's bank refused to pay the check, stamping " 'payment stopped' " on the face of the check and " 'canceled' " on the back. *Id.* The plaintiff sued the defendant. *Id.* The trial court entered judgment for the defendant. *Id.* at 524.

¶ 25    The plaintiff appealed. *Id.* At issue was whether the plaintiff was a holder in due course. *Id.* at 527. The defendant argued that the plaintiff was not a holder in due course, because (1) the plaintiff did not acquire the check in good faith and (2) the check was forged. *Id.* The appellate court disagreed, holding that the plaintiff was a holder in due course. *Id.* The court observed that "the burden of proof that the holder is not a holder in due course is on the defendant." *Id.* Because the plaintiff met the requirements of a holder in due course, "[t]he *prima facie* case of holder in due course remained with the plaintiff notwithstanding the plea of forgery, and the defendant was required to prove the defense of forgery set up by him by proper and competent evidence."[2] *Id.* at

---

[2]The court determined that the plaintiff met the requirements of a holder in due course under the Negotiable Instrument Act of Illinois (*Jacobs*, 322 Ill. App. at 527; Ill. Rev. Stat. 1943, ch. 98, ¶ 72), which was superseded by the Code. See *Kratovil v. Thieda*, 36 Ill. 2d 247, 249 (1966); *Holcomb State Bank v. Adamson*, 107 Ill. App. 3d 908, 910 (1982); see also 810 ILCS 5/3-101 *et seq.* (West 2020) (section of Code addressing negotiable instruments, like checks, is referred to as the Uniform Commercial Code—Negotiable Instruments).

528. Because the defendant "did not introduce any evidence of forgery," the plaintiff remained a holder in due course. *Id.*

¶ 26    The same holds true here.

¶ 27    Although *Jacobs* is different from our case in that here we do not know whether Jones paid a service fee to plaintiff to cash the check, we find this difference immaterial. "A court may take judicial notice of matters of common knowledge, or of facts which, while not generally known, are easily verifiable." *Harris Trust & Savings Bank v. American National Bank & Trust Co. of Chicago*, 230 Ill. App. 3d 591, 597 (1992). Similarly, "[a]n appellate court may take judicial notice of readily verifiable facts if doing so will aid in the efficient disposition of a case, even if judicial notice was not sought in the trial court." (Internal quotation marks omitted.) *Aurora Loan Services, LLC v. Kmiecik*, 2013 IL App (1st) 121700, ¶ 37. It is common knowledge that currency exchanges engage in the business of, among other things, "issuing and cashing money orders or checks" for a fee. *Jacobs*, 322 Ill. App. at 524; see 205 ILCS 405/19.3 (West 2020) (guideline for setting fees currency exchanges may charge for services). Indeed, defendant conceded as much at oral argument. The fact that we do not know the amount of the fee plaintiff charged to cash the check or how plaintiff collected that fee does not affect our analysis. All that matters here is that plaintiff paid the check for a fee when Jones presented it.

¶ 28    Because plaintiff accepted check 4024 from Jones without knowledge of any irregularity with the check, plaintiff was a holder in due course who may recover from defendant. See *First of America Bank-Northeast Illinois, N.A. v. Bocian*, 245 Ill. App. 3d 495, 499 (1993) ("[A] [holder in due course] of an instrument upon which payment has been stopped nevertheless has a right to recover from the drawer of the instrument."). Defendant could have presented evidence that negated the presumption that plaintiff was a holder in due course, but it did not. See *Jacobs*, 322

Ill. App. at 527 (noting that a party challenging another party's status as a holder in due course bears the burden of rebutting that presumption by presenting evidence that negates the requirements that must be met for status as a holder in due course). Thus, the presumption that plaintiff was a holder in due course remained with plaintiff until defendant proved a valid defense. See *id.*

¶ 29 Given the above, we must conclude that the trial court's finding that plaintiff was a holder in due course is not against the manifest weight of the evidence.

¶ 30 This brings us to the second issue. Defendant claims that it established a defense to plaintiff's claim that it was a holder in due course. Defendant argues that sections 3-414(c), 3-415(d), and 3-602(a) of the Code (810 ILCS 5/3-414(c), 3-415(d), 3-602(a) (West 2020)) "proscribe [*sic*] for no liability of a drawer of a check[, *i.e.*, defendant,] when [the check] is accepted by the bank or paid." The sections defendant cites provide, in relevant part, that (1) the drawer of a check is discharged once the check is accepted by a bank, regardless of who accepted the check or when the check was accepted (*id.* § 3-414(c)); (2) liability of the indorser is discharged when the check is accepted by a bank after the check is indorsed (*id.* § 3-415(d)); and (3) the obligation of the drawer to pay the check is discharged to the extent that payment was made (*id.* § 3-602(a)).

¶ 31 In defendant's brief and at oral argument, it claimed that, under these provisions and especially under section 3-414(c), it was absolved of any liability to plaintiff once NFCU presented check 4024 to Chase and Chase paid the check. In doing so, defendant relies on its own construction of these provisions, which certainly is not dispositive. See *Bocian*, 245 Ill. App. 3d at 497. Moreover, defendant overlooks that section 3-602(a) refers to section 3-306 of the Code (810

ILCS 5/3-306 (West 2020)), which provides an exception that applies when a party was a holder in due course. Specifically, section 3-306 provides:

> "A person taking an instrument, *other than a person having rights of a holder in due course*, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. *A person having rights of a holder in due course takes free of the claim to the* [*check*]." (Emphases added.) *Id.*

¶ 32    Defendant also claims that *Triffin* is dispositive. In that case, the defendant (a hairstyling school that provided financial assistance to its students through a government program) issued a check to one of its students. *Triffin*, 247 A.3d at 9. The student, without indorsing the check, deposited the check electronically into her own bank account and then, after indorsing the check, cashed the check at a check-cashing business. *Id.* The check-cashing business presented the check to the defendant's bank. *Id.* The defendant's bank refused to pay the check because of " 'Duplicate Presentment.' " *Id.* at 10. The check-cashing business "then sold several dishonored checks, including [the check the defendant issued to its student], to [the] plaintiff through an assignment agreement." *Id.* When the plaintiff could not enforce payment on the check, it sued the defendant. *Id.* The defendant claimed that it was not liable to the plaintiff because the check had already been paid. *Id.* The trial court found in favor of the defendant, and the plaintiff appealed. *Id.*

¶ 33    At issue on appeal was, among other things, whether payment resulting from the electronic deposit supported a prior-payment defense. See *id.* The plaintiff claimed that it did not, because the student did not indorse the check when it was electronically deposited. *Id.* The appellate court disagreed, noting that New Jersey law permits a bank's customer to deposit a check into the customer's account without an indorsement. *Id.* at 12. Thus, irrespective of the fact that the student

did not indorse the check when it was electronically deposited, the defendant's prior-payment defense was viable because the evidence revealed that the check was electronically deposited before it was presented to the check-cashing business. *Id.* at 13.

¶ 34    Undoubtedly, as in *Triffin*, Jones electronically deposited the check in his NFCU account *before* he sought to cash check 4024 with plaintiff. Although the facts here and in *Triffin* are similar, a legal difference prevents *Triffin* from applying. The difference is that the plaintiff in *Triffin* never claimed that it was a holder in due course, and rightfully so. The check at issue in *Triffin* was among the dishonored checks the plaintiff bought from the check-cashing business knowing that they were dishonored. Because the plaintiff in *Triffin* had notice that the check was dishonored, it could not claim to be a holder in due course. *Coleman*, 291 Ill. App. 3d at 674 (one who accepts a check with notice that it has been dishonored is not a holder in due course). Here, unlike in *Triffin*, plaintiff had no notice of any irregularity with check 4024 when Jones presented it. See 6B David Frisch, Lawrence's Anderson on the Uniform Commercial Code § 3-414:6, Comment (3d ed. 2022) (commenting that "[n]ot raised by [the] plaintiff or the court [in *Triffin*] was the possibility that the plaintiff had acquired the rights of a holder in due course. If so, the [defendant's] bank's [prior] payment would not be a defense."); see also 810 ILCS 5/3-601(b) (West 2020) ("Discharge of the obligation of a party is not effective against a person acquiring rights of a holder in due course of the [check] without notice of the discharge."); *id.* § 3-302(b) (discharge, other than discharge in an insolvency proceeding, is effective against a holder in due course only if the holder had notice of the discharge).

¶ 35    This legal difference, *i.e.*, that plaintiff here was a holder in due course and the plaintiff in *Triffin* was not, is pivotal. A holder in due course is subject to

"(1) a defense of the [drawer] based on (i) infancy of the [drawer] to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under the law, nullifies the obligation of the [drawer], (iii) fraud that induced the [drawer] to sign the [check] with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the [drawer] in *insolvency proceedings*[.]" (Emphasis added.) 810 ILCS 5/3-305(a)(1) (West 2020).

These enumerated defenses are "real defenses." *Bocian*, 245 Ill. App. 3d at 497; 810 ILCS Ann. 5/3-305, Uniform Commercial Code Comment 1, at 166 (Smith-Hurd 2014) ("Subsection (a) states the defenses to the obligation of a party to pay the instrument. Subsection (a)(1) states the 'real defenses' that may be asserted against any person entitled to enforce the instrument."). Any defense not listed in section 3-305(a)(1) is a "personal defense," and such defenses do not apply to a holder in due course. See James J. White & Robert S. Summers, Handbook of the Law Under the Uniform Commercial Code, § 14-9, at 573 (2d ed. 1980) (noting that defenses not listed in section 3-305(2) of the Uniform Commercial Code (U.C.C. § 3-305(2) (Unif. Law Comm'n 1978)) (which are substantively the same as those delineated in section 3-305(a)(1) of the Code) are "personal defenses," which do not apply to a holder in due course); see also *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1150 (11th Cir. 2006) ("In the law of commercial paper, personal defenses are affirmative defenses that may not be asserted against a holder-in-due-course."). Prior payment of a check is not delineated in section 3-305(a)(1) of the Code. 810 ILCS 5/3-305(a)(1) (West 2020); 810 ILCS Ann. 5/3-302, Uniform Commercial Code Comment 3, at 120 (Smith-Hurd 2014) (aside from discharge in insolvency, discharge is not a "real defense" under section 3-305(a)(1)). Because it does not appear in section 3-305(a)(1), prior payment is a personal defense, which may not be asserted against a holder in due course who has

no notice of the prior payment. See 810 ILCS 5/3-302(b), 3-601(b) (West 2020); see also *Bank of New York Mellon v. Deane*, 41 Misc. 3d 494, 504 (N.Y. Sup. Ct. 2013).

¶ 36    This conclusion is fatal to defendant's claim that it is discharged from any liability to plaintiff. The fact that Chase paid NFCU is immaterial because, as noted above, plaintiff was a holder in due course who took check 4024 from Jones without notice of the prior payment. See *Bocian*, 245 Ill. App. 3d at 497 (a holder in due course "[takes] the check free from all defenses of any party to the [check] with whom the holder has not dealt except those real defenses enumerated in section 3-305 of the Code [(810 ILCS 5/3-305 (West 2020))]."). Thus, Chase's prior payment to NFCU had no effect in discharging defendant's obligation to pay plaintiff, precisely because discharge for prior payment is a personal defense that cannot be asserted against plaintiff, a holder in due course, who had no knowledge of the prior payment.[3]

¶ 37    Given that defendant's prior payment did not discharge its obligation to pay plaintiff, we determine that defendant must pay plaintiff for check 4024, which Jones had presented to plaintiff, even though that paper check was dishonored by Chase for "Duplicate Presentment." See 810 ILCS 5/3-414(b)(i) (West 2020) ("If an unaccepted [check] is dishonored, the drawer is obliged to pay the [check] (i) according to its terms at the time it was issued ***.").

¶ 38    The Check 21 Act does not alter our conclusion. Under the Check 21 Act (12 U.S.C. § 5003(b) (2018)), "[a] substitute check shall be the legal equivalent of the original check for all purposes, including any provision of any Federal or State law, and for all persons if the substitute

---

[3]We note that *discharge in insolvency proceedings* can be asserted against a holder in due course. 810 ILCS 5/3-305(a)(1)(iv) (West 2020). This discharge is not at issue here, as there is no evidence of an insolvency proceeding.

check [ ] [meets specified standards]." A substitute check, which is "a paper reproduction of the original check," "is suitable for automated processing in the same manner as the original check." *Id.* § 5002(16)(D). However,

> "[a] substitute check that is the legal equivalent of the original check *** shall be subject to any provision *** of *** the Uniform Commercial Code, and any other applicable Federal or State law as if such substitute check were the original check, *to the extent such provision of law is not inconsistent with this chapter*." (Emphasis added.) *Id.* § 5003(e).

Thus, the Check 21 Act "shall supersede any provision of Federal or State law, including the Uniform Commercial Code, that is *inconsistent* with this chapter, but *only to the extent of the inconsistency*." (Emphases added.) *Id.* § 5012.

¶ 39    The problem for defendant here is that, even though a substitute check is the equivalent of an original paper check, the Code provides protection to a holder in due course that must prevail here because defendant has presented no authority indicating that the Code's protection for a holder in due course is at odds with the Check 21 Act. *Speedy Check Cashers, Inc.*, on which plaintiff relies, is instructive. There, the defendant issued a payroll check to its employee that the employee deposited and presented to the plaintiff, a check-cashing company. See *Speedy Check Cashers, Inc.*, 286 F. Supp. 3d at 935. When the check was dishonored, the plaintiff sued the defendant, and at issue in the proceedings was, among other things, whether the plaintiff was a holder in due course. *Id.* The defendant argued that the plaintiff was not, as warranties delineated in the Check 21 Act preempted applicable Illinois law. *Id.* at 937. The court disagreed. *Id.* at 938. The court reasoned:

"The [defendant], as the drawer of the original check, is protected by the substitute check warranties [under the Check 21 Act]. [Citations.] But [the plaintiff], as the transferee of a non-substitute check, is not. The Check 21 Act therefore does not supplant the relief [the plaintiff] seeks under state law. Because the provisions of the [Code] upon which [the plaintiff] relies for its holder-in-due-course claim—[citation]—are not inconsistent with the Check 21 Act in this context, and because these state-law provisions do not otherwise stand in the way of the Check 21 Act's objectives, [the plaintiff's holder-in-due-course] claim is not preempted." *Id.* at 937-38.

¶ 40    Under *Speedy Check Cashers, Inc.*, we must conclude that the Check 21 Act does not preempt the protection that the Code affords a holder in due course. Consequently, the Check 21 Act does not change our conclusion that (1) plaintiff was a holder in due course and (2) defendant's obligation to pay plaintiff was not discharged.

¶ 41    This brings us to the third issue, *i.e.*, whether the court should have awarded plaintiff fees and court costs. Plaintiff asked that fees and court costs be awarded pursuant to section 3-416(b) of the Code (810 ILCS 5/3-416(b) (West 2020)), which allows for an award of damages, including expenses, for breach of certain transfer warranties. The trial court awarded plaintiff $350 in attorney fees, $25 for the return check fee, and $169.25 in court costs. Defendant argues that plaintiff is not entitled to fees and court costs because "there was no evidence presented that any of the warranties were breached or that [d]efendant even made any warranties to [p]laintiff since [defendant] never passed the check to [p]laintiff." Plaintiff contends that it is entitled to fees and court costs because, as a holder in due course, the warranties made to Jones extended to it.

¶ 42    Resolving this issue requires that we examine the provisions of the Code that govern transfers and the warranties that arise therefrom. In doing so, we are guided by the well-settled

rules of statutory construction. *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 26. "Our primary and overriding concern is to ascertain and give effect to the intent of the legislature." *Id.* ¶ 27. "Legislative intent is best determined from the language of the statute itself, which if unambiguous should be enforced as written." *Id.* "In giving effect to the statutory intent, the court should consider, in addition to the statutory language, the reason for the law, the problems to be remedied, and the objects and purposes sought." *Id.* "It is also true that statutes must be construed to avoid absurd results." *Id.* "When a proffered reading of a statute leads to absurd results or results that the legislature could not have intended, courts are not bound to that construction, and the reading leading to absurdity should be rejected." *Id.* We review *de novo* the construction of statutes. *Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801, ¶ 18.

¶ 43   Two sections of the Code are applicable here: (1) section 3-203 (810 ILCS 5/3-203(a) (West 2020)) and (2) section 3-416 (*id.* § 3-416). Section 3-203(a) provides:

"An instrument is transferred when it is delivered by a person *other than its issuer* for the purpose of giving to the person receiving delivery the right to enforce the instrument." (Emphasis added.) *Id.* § 3-203(a).

¶ 44   The clear language of this section indicates that defendant, as the drawer (or issuer (see *id.* § 3-105(c))) of the check, did not "transfer[ ]" check 4024 in giving it to Jones. See *id.* § 3-203(a) Rather, as section 3-203(a) clearly provides, the check was transferred only when someone other than defendant gave the check to a third party so that the third party could enforce it. In this case, Jones transferred the check when he presented it to plaintiff.

¶ 45   The question becomes what warranties were given to which individuals when Jones transferred the check to plaintiff per section 3-203(a). Section 3-416 of the Code offers guidance. That section provides:

"(a) A person who transfers an instrument for consideration warrants to the transferee and, if the transfer is by indorsement, to any subsequent transferee that:

(1) the warrantor is a person entitled to enforce the instrument,

(2) all signatures on the instrument are authentic and authorized,

(3) the instrument has not been altered,

(4) the instrument is not subject to a defense or claim in recoupment of any party which can be asserted against the warrantor, and

(5) the warrantor has no knowledge of any insolvency proceeding commenced with respect to the maker or acceptor or, in the case of an unaccepted draft, the drawer.

(b) A person to whom the warranties under subsection (a) are made and who took the instrument in good faith may recover from the warrantor as damages for breach of warranty an amount equal to the loss suffered as a result of the breach, but not more than the amount of the instrument plus expenses and loss of interest incurred as a result of the breach.

(c) The warranties stated in subsection (a) cannot be disclaimed with respect to checks. Unless notice of a claim for breach of warranty is given to the warrantor within 30 days after the claimant has reason to know of the breach and the identity of the warrantor, the liability of the warrantor under subsection (b) is discharged to the extent of any loss caused by the delay in giving notice of the claim.

(d) A cause of action for breach of warranty under this Section accrues when the claimant has reason to know of the breach." *Id.* § 3-416.

¶ 46    "Transfer" has the same meaning in sections 3-203 and 3-416. See 810 ILCS Ann. 5/3-416, Uniform Commercial Code Comment 2, at 298 (Smith-Hurd 2014) ("Since the purpose of transfer (Section 3-203(a)) is to give the transferee the right to enforce the instrument, subsection (a)(1) [of section 3-416] is a warranty that the transferor is a person entitled to enforce the instrument ***."). The term that requires interpretation here is "warrantor." We determine that "warrantor" refers to the person who transferred the check. In this case, that person was Jones, as he was the person who, in "transfer[ring] [the check] for consideration[,]" "warrant[ed]" that the five warranties delineated in section 3-416(a) were met. 810 ILCS 5/3-416(a) (West 2020). To conclude that *defendant* was the warrantor is absurd and flatly contrary to the text. Not only did defendant not "transfer[ ]" check 4024 to Jones when it gave the check to him (*id.* § 3-203(a)), and thus defendant could not be a transferor, but also defendant could not possibly make any of the warranties listed in section 3-416(a)(1) to (a)(4), as it had no knowledge with which to make them. Specifically, defendant could not warrant to plaintiff that Jones was entitled to enforce check 4024 when Jones presented it to plaintiff. Indeed, Jones was not entitled to enforce check 4024 when he presented it to plaintiff because he had previously deposited it into his account with NFCU. Likewise, defendant could not warrant that Jones's indorsement was authentic and authorized, as Jones indorsed the check after defendant gave it to him. Also, because check 4024 was no longer in defendant's possession, defendant could not warrant that check 4024 had not been altered when Jones presented it to plaintiff or that check 4024 was not subject to any defense or claim in recoupment that could be asserted against Jones. 810 ILCS Ann. 5/3-416, Uniform Commercial Code Comment 3, at 299 (Smith-Hurd 2014) (when a breach of section 3-416(a)(4) arises, transferee that is a holder in due course may (1) proceed against the transferor or (2) "litigat[e] with the [drawer] on the [check] the issue of the holder-in-due-course status of the transferee").

¶ 47    Further, under section 3-416(a)(5), the warrantor guarantees it has "no knowledge of any insolvency proceeding commenced with respect to *the maker or acceptor or*, \*\*\* *the drawer*." (Emphasis added.) 810 ILCS 5/3-416(a)(5) (West 2020); see 810 ILCS Ann. 5/3-416, Uniform Commercial Code Comment 4, at 299 (Smith-Hurd 2014) ("If insolvency proceedings \*\*\* have been instituted against the party who is expected to pay and the transferor knows it, the concealment of that fact amounts to a fraud upon the transferee, and the warranty against knowledge of such proceedings is provided accordingly."). It would be absurd to suggest that the legislature would require the warrantor to guarantee it had *no knowledge* of its *own* insolvency or its *own* insolvency proceedings, rather than simply guarantee it was not insolvent or had not instituted insolvency proceedings.

¶ 48    Given that Jones was the warrantor, plaintiff's claim for fees and court costs lies against Jones, not defendant. See 810 ILCS 5/3-416(b) (West 2020). Thus, plaintiff should have sent its demand for payment to Jones, not defendant. See *id.* § 3-416(c). Because the court should not have ordered defendant to pay plaintiff's fees and costs under section 3-416 of the Code, as defendant was not a warrantor, we vacate the $350 in attorney fees, the $169.25 in court costs, and the $25 return check fee. See *In re Estate of Watts*, 2022 IL App (1st) 210521, ¶ 26 (because court's fee award had no statutory basis, fee had to be vacated).

¶ 49    The fact that plaintiff was a holder in due course does not change our conclusion. "The *transferor* breaches [transfer warranties] *even if the transferee becomes a holder in due course*." (Emphases added.) Hawkland, *supra* § 3-417:13. Thus, the fact that plaintiff was a holder in due course does not make *defendant* (which was not the transferor) in any way liable to plaintiff for a breach of the transfer warranties. See *id.* Rather, as we determined, Jones, as the transferor and warrantor, was solely liable to plaintiff for breaching any transfer warranties. While plaintiff, as a

holder in due course, may maintain an action against defendant for the amount of the check, plaintiff may initiate a claim for a breach of the transfer warranties only against Jones. See 810 ILCS Ann. 5/3-416, Uniform Commercial Code Comment 1, at 298 (Smith-Hurd 2014) ("If there is an indorsement the warranty runs with the instrument and the remote holder may sue the indorser-warrantor directly and thus avoid a multiplicity of suits.").

¶ 50     As a final matter, we would be remiss if we did not comment on the inequities that this all too familiar scenario has created. See John R. Gardner, Matthew T. Houston, & Haniya H. Mir, *Banks Beware: Mobile Checking and the Rise of Duplicate Presentment*, 46 UCC L.J. 177 (2015); see also Sarah Jane Hughes, *Duty Issues in the Ever-Changing World of Payments Processing: Is It Time for New Rules?*, 83 Chi-Kent L. Rev. 721, 738 (2008). Without question, the only person who did anything "wrong" in this case is Jones, who is not a party to this action and is, most likely, long gone. Be that as it may, however, our hands are tied. Any revision to the Code, which is sorely needed considering the technological advancements in banking that the Check 21 Act addresses, must come from the legislature, not the courts. See *Hanna v. First National Bank of Rochester*, 661 N.E.2d 683, 688 (N.Y. 1995).

¶ 51                          III. CONCLUSION

¶ 52     For the above-stated reasons, we affirm in part and vacate in part the judgment of the circuit court of Lake County.

¶ 53     Affirmed in part and vacated in part.

*Western & Lake Check Cashers, LLC v. Propane Pete, LLC*, **2023 IL App (2d) 220291**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 21-SC-5356; the Hon. Patricia L. Cornell, Judge, presiding. |
| **Attorneys for Appellant:** | Ilia Usharovich, of Wheeling, for appellant. |
| **Attorneys for Appellee:** | David J. Frankel, of Sorman & Frankel, Ltd., of Chicago, for appellee. |