2026 IL App (1st) 250348-U

Fourth Division
Filed May 14, 2026

No. 1-25-0348

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| WEST STATE STREET CHECK CASHING, an Illinois limited liability company, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | Appeal from the Circuit Court of Cook County |
| v. | ) ) | No. 24 M1 112693 |
| UNITED EQUITABLE GROUP, LTD., an Illinois corporation, d/b/a United Equitable Insurance Company, | ) ) ) ) | The Honorable Stephen Swedlow, Judge, presiding. |
| Defendant- Appellant. | ) | |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Navarro and Justice Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's order granting summary judgment in favor of the plaintiff as the defendant's obligation to pay was not discharged. However, the plaintiff was not entitled to treble damages, attorney fees, or costs.

¶ 2    Defendant, United Equitable Group, Ltd. (United Equitable), appeals the circuit court's grant of summary judgment in favor of plaintiff, West State Street Check Cashing (West State). For the reasons stated, we affirm in part and vacate in part.

¶ 3                          I. BACKGROUND

¶ 4    On August 8, 2023, United Equitable, an insurance company, issued a check for $420 to Ledoshia Oliver, its insured, following her claim for damages to her car. Oliver claimed that she

hit a deer on May 23, 2023. After United Equitable examined the damage to Oliver's car, it determined that the damage was not consistent with Oliver's claim. United Equitable voided the previously issued check on August 11, 2023, and it sent a letter to Oliver that it denied her claim on August 21, 2023.

¶ 5 On August 28, 2023, Oliver cashed the check at West State. The check was dishonored by United Equitable's bank by reason of "refer to maker [*sic*]." West State was charged a $25 returned check fee by its bank. On September 6, 2023, West State sent United Equitable a demand for payment on the check plus the returned check fee. United Equitable did not pay the amount demanded.

¶ 6 West State filed a complaint against United Equitable on May 9, 2024. West State alleged it was the holder in due course and was entitled to enforce the check against United Equitable. West State sought $445 in damages, $1260 in treble damages, and $350 in attorney fees, a total of $2055.

¶ 7 On August 2, 2024, United Equitable filed a motion for summary judgment. It asserted that West State was not the holder in due course, and alternatively, even if West State was the holder in due course, United Equitable's claim of fraud defeated West State's claim.

¶ 8 On November 16, 2024, West State filed a cross-motion for summary judgment. It argued that it was the holder in due course and that United Equitable could not establish that its obligation to pay had been extinguished.

¶ 9 On February 10, 2025, the circuit court entered an order granting West State's motion for summary judgment and entered a judgment in the sum of $2055 plus court costs.

¶ 10 This appeal timely follows.

¶ 11 II. ANALYSIS

¶ 12 On appeal, United Equitable argues that the circuit court erred in granting summary judgment in favor of West State because it presented a real defense under the Uniform Commercial Code (UCC) (810 ILCS 5/1-101 *et seq.* (West 2024)). United Equitable also argues that the circuit court

erred in awarding West State treble damages and attorney fees as it was not the transferor or warrantor of the draft.

¶ 13    Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2024). "A genuine issue of material fact exists where the facts are disputed or where reasonable minds could draw different inferences from the undisputed facts." *Nine Group II, LLC v. Liberty International Underwriters, Inc.*, 2020 IL App (1st) 190320, ¶ 34. Summary judgment is a drastic remedy and should be granted only where the movant's right is "so clear as to be free from doubt." *Community Bank of Greater Peoria v. Carter*, 282 Ill. App. 3d 505, 508 (1996). Since the parties filed cross-motions for summary judgement, they concede that no question of material fact existed and that only a question of law existed that the court could decide based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Nonetheless, the mere filing of cross-motions for summary judgment does not conclusively establish that there is no issue of material fact, nor does it obligate the circuit court to enter summary judgment for either party. *Id.* We review a trial court's entry of summary judgment *de novo*. *Id.*

¶ 14    Initially, we note that the circuit court entered a judgment of $2055 plus court costs in favor of West State. The court did not itemize the judgment. "The general rule provides that a judgment is to be construed like other written instruments with the determinative factor being the intention of the court as gathered from all parts of the judgment itself." *Fieldcrest Builders, Inc. v. Antonucci*, 311 Ill. App. 3d 597, 605 (1999). "While an unambiguous judgment will be enforced as drafted, an ambiguous judgment should be read in conjunction with the entire record, including the pleadings and issues, and construed in accordance therewith." *LB Steel, LLC v. Carlo Steel Corp.*, 2018 IL App (1st) 153501, ¶ 28 (citing *Fieldcrest Builders*, 311 Ill. App. 3d at 605). Looking at the record, in its complaint, West State sought $445 in damages (including $25 for the returned check fee), $1260 in treble damages, and $350 in attorney fees. These amounts total $2055.

Therefore, we can deduce that that circuit court awarded West State the total amounts sought as prayed for in the complaint.

¶ 15                                         A. Holder in Due Course

¶ 16          To aid our analysis, we must first ascertain each party's status under the UCC.

¶ 17          The UCC defines "drawer" as "a person who signs or is identified in a draft as a person ordering payment." 810 ILCS 5/3-103(a)(3) (West 2024). Under the UCC, United Equitable is the drawer of the check. It is also the issuer. *Id.* § 3-105(c).

¶ 18          Section 3-203(a) provides, "An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." *Id.* § 3-203(a). Oliver transferred the check to West State when she cashed it. Accordingly, Oliver is the transferor.

¶ 19          Upon taking possession of the check, West State became the holder. *See* 810 ILCS 5/1-201(b)(21)(A) (West 2024). The UCC defines a holder in due course as:

>          "the holder of an instrument if:
>
>               (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity, and
>
>               (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a defense or claim in recoupment stated in Section 3-305(a)." 810 ILCS 5/3-302(a) (West 2024).

In other words, a holder in due course is "someone who takes an instrument that appears to be facially valid, for value, in good faith, without notice that it is overdue, dishonored, or subject to an uncured default with respect to payment, contains no unauthorized signature, has not been altered, and is not subject to certain other defenses." *Coleman v. Heidke*, 291 Ill. App. 3d 670, 674 (1997).

¶ 20    Here, the parties do not dispute that West State was a holder in due course of the check. When West State accepted the check from Oliver, it appeared facially valid. The fact that United Equitable stopped payment on the check does not negate West State's status as a holder in due course. See *First of America Bank-Northeast Illinois, N.A. v. Bocian*, 245 Ill. App. 3d 495, 499 (1993) ("[A holder in due course] of an instrument upon which payment has been stopped nevertheless has a right to recover from the drawer of the instrument.").

¶ 21                                  B. Defense of Fraud

¶ 22    United Equitable's first argument is that circuit court erred in entering summary judgment in favor of West State as it presented uncontested evidence of a real defense under the UCC. United Equitable asserts that Oliver made false representations to induce it to make payment.

¶ 23    As the holder of the check, West State was entitled to enforce it. See 810 ILCS 5/3-301 (West 2024). Further as the drawer of the check, United Equitable was obligated to pay the dishonored check in accordance with its terms at the time it was issued. See *id.* § 3-414(b). The right of a holder in due course to enforce the obligation of a party to pay is subject to:

> "a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under the law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the

obligor in insolvency proceedings." 810 ILCS 5/3-305(a)(1) (West 2024).

These enumerated defenses are called "real defenses." 810 ILCS Ann. 5/3-305, Uniform Commercial Code Comment 1, at 166 (Smith-Hurd 2014) ("Subsection (a) states the defenses to the obligation of a party to pay the instrument. Subsection (a)(1) states the 'real defenses' that may be asserted against any person entitled to enforce the instrument.") Any other defense is a personal defense, which does not apply to a holder in due course. *First of America Bank-Northeast Illinois, N.A*, 245 Ill. App. 3d at 497.

¶ 24        Fraud as referenced in subsection (a)(1)(iii) is further expounded upon in the official comments. Comment 1 explains:

> "Subsection (a)(1)(iii) refers to "real" or "essential" fraud, sometimes called fraud in the essence or fraud in the factum, as effective against a holder in due course. The common illustration is that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document. The theory of the defense is that the signature on the instrument is ineffective because the signer did not intend to sign such an instrument at all. Under this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms. The test of the defense is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge. In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the intelligence, education, business experience, and ability to read or understand English of the signer. Also relevant is the nature of the representations that were made, whether the signer had good reason to rely on the representations or to have

confidence in the person making them, the presence or absence of any third person who might read or explain the instrument to the signer, or any other possibility of obtaining independent information, and the apparent necessity, or lack of it, for acting without delay. Unless the misrepresentation meets this test, the defense is cut off by a holder in due course." 810 ILCS Ann. 5/3-305, Uniform Commercial Code Comment 1, at 166 (Smith-Hurd 2014).

Therefore, fraud in the factum, under subsection (a)(1)(iii), concerns misrepresentations relating to the nature of the instrument. Fraud in the inducement is not an enumerated real defense; it is a personal defense. See *First of America Bank-Northeast Illinois, N.A.*, 245 Ill. App. 3d at 497. Other states have addressed this issue. "[T]he Illinois UCC is based on the Uniform Commercial Code enacted by all 50 states and, therefore, decisions from other states and federal case law may be helpful in this analysis. In the absence of Illinois cases on the subject, Illinois courts have looked to UCC decisions from other jurisdictions." *Whitaker v. Wedbush Securities, Inc.*, 2020 IL 124792, ¶ 20 (citing *Patrick v. Wix Auto Co.*, 288 Ill. App. 3d 846, 850 (1997)).

¶ 25    In *RR Maloan Investments, Inc. v. New HGE, Inc.*, 428 S.W.3d 355 (Tex. App. 2014), the plaintiff sued the defendant to recover payment on a stopped check. *Id.* at 358. The defendant issued the check to the payee as consideration for a Rolex watch. *Id.* The defendant later learned that the watch was counterfeit and issued a stop payment order on the check. *Id.* The payee presented the check to the plaintiff. *Id*. When the plaintiff presented the check to the defendant's bank for payment, the bank refused to honor the check due to the stop payment order. *Id*. Following a bench trial, the court found in favor of the defendant, and the plaintiff appealed. *Id*. at 358-59.

¶ 26    On appeal, the defendant argued that it was induced to issue the check by the payee's misrepresentations and that the defense of fraud barred the plaintiff from recovery. *Id*. at 363. The appellate court found that the fraud asserted by the defendant did not foreclose its obligations to the plaintiff, the holder in due course. *Id*. at 364. The court found that the fraud as contemplated under the UCC "addresses a situation in which the maker has been deceived into signing a note

based on a misunderstanding that it was some other type of instrument, or a misunderstanding as to the essential terms of the note." *Id*. The defendant presented no testimony that it signed the check based on a misunderstanding about the type of instrument at issue, and its challenge to the watch's authenticity did not bar the plaintiff from recovery. *Id.*

¶ 27    As is the case here. United Equitable asserts it presented a real defense of fraud because of Oliver's misrepresentations to induce payment. In its motion for summary judgment, United Equitable presented no evidence that it misunderstood the type of instrument it was signing. The fraud asserted by United Equitable is not contemplated by section 3-305. See 810 ILCS Ann. 5/3-305, Uniform Commercial Code Comment 1, at 166 (Smith-Hurd 2014) ("Under this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms.") Accordingly, as a matter of law, United Equitable's defense of fraud in the inducement is not a real defense, and it does not bar West State from collecting payment on the check. See *First of America Bank-Northeast Illinois, N.A.*, 245 Ill. App. 3d at 497. Therefore, the circuit court did not err in granting summary judgment in favor of West State as West State was the holder in due course and United Equitable's obligation to pay was not discharged by a real defense.

¶ 28                             C. Treble Damages and Fees

¶ 29    The final issue is whether the circuit court correctly awarded West State treble damages, attorney fees, and court costs. United Equitable argues that the circuit court erred in awarding treble damages and attorney fees as it was not the transferor or the warrantor of the draft.

¶ 30    Section 3-416 provides:

> "(a) A person who transfers an instrument for consideration warrants
> to the transferee and, if the transfer is by indorsement, to any subsequent
> transferee that:
> (1) the warrantor is a person entitled to enforce the instrument,
> (2) all signatures on the instrument are authentic and authorized,

(3) the instrument has not been altered,

(4) the instrument is not subject to a defense or claim in recoupment of any party which can be asserted against the warrantor, and

(5) the warrantor has no knowledge of any insolvency proceeding commenced with respect to the maker or acceptor or, in the case of an unaccepted draft, the drawer.

(b) A person to whom the warranties under subsection (a) are made and who took the instrument in good faith may recover from the warrantor as damages for breach of warranty an amount equal to the loss suffered as a result of the breach, but not more than the amount of the instrument plus expenses and loss of interest incurred as a result of the breach." 810 ILCS 5/3-416 (West 2024).

¶ 31 As discussed above, Oliver was the transferor of the draft. The term " 'warrantor' refers to the person who transferred the check." *Western & Lake Check Cashers, LLC v. Propane Pete, LLC*, 2023 IL App (2d) 220291, ¶ 46 (citing 810 ILCS Ann. 5/3-416, Uniform Commercial Code Comment 2, at 298 (Smith-Hurd 2014) ("Since the purpose of transfer (Section 3-203(a)) is to give the transferee the right to enforce the instrument, subsection (a)(1) [of section 3-416] is a warranty that the transferor is a person entitled to enforce the instrument ***.")). Accordingly, as Oliver was the person who transferred the check for consideration, she warranted to West State the warranties listed in section 3-416(a) were met. 810 ILCS 5/3-416(a) (West 2024).

¶ 32 Given Oliver was the warrantor, the circuit court erred in awarding fees and court costs as any claim for fees and court costs lie against Oliver, not United Equitable. See 810 ILCS 5/3-416(b) (West 2024). As United Equitable is not a warrantor, it is not liable for breach of warranty. We therefore vacate the award of $350 in attorney fees, $25 for the returned check fee, and the court costs. See *Western & Lake Check Cashers*, 2023 IL App (2d) 220291, ¶ 48.

¶ 33 Regarding treble damages, we agree with United Equitable that the circuit court erred. West State relies on section 17-1(B)(1) and (E) of the Criminal Code of 2012 (720 ILCS 5/17-1(B)(1),

(E) (West 2024)) to support its argument that the circuit court correctly awarded treble damages. However, in order to recover under section 17-1(E), a plaintiff must show "(1) that the defendants delivered a check to obtain personal property; (2) that the defendants knew at the time that the account was insufficient to pay the check; (3) that the defendants acted with the intent to defraud; and (4) that the defendant failed to pay on demand." *Veteran Supply Co. v. Swaw*, 192 Ill. App. 3d 286, 288 (1989).

¶ 34        West State argues that United Equitable stopping payment on the check "brings its conduct squarely within the parameters of [section] 5/17-1(E)." However, "intent to defraud is a distinctly different mental state from knowledge that the check will not be paid." *People v. Sumner*, 107 Ill. App. 3d 368, 372 (1982). Accordingly, "one cannot infer that because payment on a check was later stopped, the drawer issued it intending to defraud the payee." *People v. Ogunsola*, 87 Ill. 2d 216, 221 (1981). There is nothing in the record that shows United Equitable intended to defraud West State when it stopped payment on the check. Therefore, we vacate the award of treble damages.

¶ 35                                    III. CONCLUSION

¶ 36        The circuit court properly found that West State was entitled to recover $420 in damages for the dishonored check, but it erred by finding that United Equitable was also liable for the returned check fee, attorney fees, costs, and treble damages. Accordingly, we affirm the judgment in favor of West State and against United Equitable in the amount of $420, but we vacate the award for the returned check fee, attorney fees, costs and treble damages.

¶ 37        Affirmed in part and vacated in part.